(February 14, 2002)

■ In the Matter of THEODORE LL., Appellant, v KEVIN MM. et al., Respondents. (Proceeding No. 1.) In the Matter of DUSTIN LL., a Neglected Child. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; THEODORE LL., Appellant. (Proceeding No. 2.) [737 NYS2d 419] —Crew III, J.P. Appeals (1) from an order of the Family Court of St. Lawrence County (Nelson, J.), entered December 10, 1999, which, inter alia, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Court Act article 6, for custody of his child, and (2) from an order of said court, entered December 27, 1999, which, inter alia, granted petitioner's application, in proceeding No. 2 pursuant to Family Court Act article 10, to extend the placement of respondent's child for a period of one year.

Theodore LL. (hereinafter the father) and respondent Sarah LL. (hereinafter the mother) are the biological parents of three children, including Dustin LL., the child who is the subject of these proceedings. The mother and father divorced in August 1991 and Dustin was born in April 1992. Shortly thereafter, the mother voluntarily surrendered the child to Catholic Charities of the local diocese and, by letter dated May 4, 1992, Cath-

olic Charities advised the father that he had been alleged to be the child's biological father. The father apparently expressed some reservations in this regard but testified that he advised Catholic Charities that if it was determined that he indeed was the child's biological father, he wished to have custody of the child. Thereafter, in July 1992, the mother revoked her surrender and asked that the child be returned to her. Her decision in this regard apparently stemmed from her desire to have her stepbrother, respondent Kevin MM., and his spouse, respondent Ramona MM., adopt the child. To that end, the mother executed an extrajudicial consent to a private placement adoption in September 1992, in which she specifically consented to the adoption of the child by Ramona and Kevin. The father subsequently testified that in the interim, in or about June 1992, he inquired as to the child's whereabouts, to which the mother responded, "His father adopted him."

For reasons not entirely clear from the record, Ramona and Kevin never formally adopted Dustin, although it appears that he resided with them from the time that he left Catholic Charities until he was placed in foster care in early 1998. Although the mother apparently saw Dustin on one or two occasions after he went to live with Ramona and Kevin, she had no contact with the child between 1993 and the commencement of these proceedings in 1998. In the interim, in or about July 1997, the parties apparently appeared in Family Court regarding a support petition filed on behalf of Dustin's biological siblings, during the course of which the question of Dustin's paternity was raised. To that end, the father submitted to genetic marker tests in October 1997, which determined that there was a 99.85% probability that he was Dustin's biological father (*see, Matter of Theodore LL. v Phelan*, 254 AD2d 605). Shortly thereafter, in January 1998, the father commenced a habeas corpus proceeding, later transferred to Family Court (*id.*), seeking custody of Dustin who, by this time, apparently was in the custody of petitioner St. Lawrence County Department of Social Services (hereinafter DSS) as a result of allegations that he had been neglected by Kevin. In June 1998, Dustin was adjudicated to be a neglected child and placed in the custody of DSS for a one-year period. In conjunction therewith, Ramona, the mother and the father each were granted visitation with the child.

Thereafter, in January 1999, the father commenced a proceeding in Family Court seeking to have the St. Lawrence County Commissioner of Social Services held in contempt for failing to enforce a prior order granting him visitation with

Dustin and, in March 1999, commenced a separate proceeding (hereinafter proceeding No. 1) pursuant to Family Court Act article 6 seeking custody of Dustin. DSS then sought, in a proceeding pursuant to Family Court Act article 10 (hereinafter proceeding No. 2), an extension and modification of the initial placement permitting custody of Dustin to be transferred to the mother subject to continued DSS supervision.[1] The father answered and cross-petitioned for custody, asserting that neither Ramona nor Kevin had standing to seek custody and that the mother, by failing to revoke the extrajudicial consent to adoption, had surrendered her parental rights.

By order entered June 11, 1999, Family Court, inter alia, denied the mother's application for leave to file a late answer and cross petition for custody, as well as the father's application for a summary determination as to the issue of custody. A combined hearing followed, during the course of which evidence was presented as to the father's and DSS's respective petitions. Thereafter, by order entered December 10, 1999, Family Court, inter alia, dismissed the father's petition in proceeding No. 1, awarded custody of Dustin to the mother and granted the father visitation. By order entered December 27, 1999, Family Court, inter alia, granted DSS's petition in proceeding No. 2 and placed custody of the child with the mother for a one-year period subject to continued DSS supervision.[2] These appeals by the father ensued.

The father argues on appeal that the mother's failure to revoke the extrajudicial consent to adoption executed in September 1992 effectively terminated her parental rights; thus, absent extraordinary circumstances—which the father claims are absent—his rights as Dustin's sole remaining biological parent should have been given priority over the mother's claim to custody as a "nonparent." In effect, the father contends that he was entitled to a summary determination as to custody. Alternatively, assuming that a best interest analysis was appropriate, the father asserts that Family Court abused its discretion in awarding custody to the mother. Although we are unpersuaded by the father's "summary determination" claim, we do, for the reasons that follow, agree that Family Court's decision to award custody of Dustin to the mother lacks a sound and substantial basis in the record.

1. It appears that the impetus for the decision to place Dustin on a "home-on-trial basis" with the mother was that the child's foster home was closing.

2. According to the latter order, the order of custody and visitation in proceeding No. 1 was to take full effect upon the expiration of the order of supervision.

"The rules germane to resolution of any custody dispute are well established and focus principally on ascertaining the best interest of the child involved * * *" (*Matter of Bates v Bates*, 290 AD2d 732, 732 [citations omitted]). This inquiry, in turn, requires analysis of, inter alia, each parent's respective strengths, weaknesses and abilities to provide for the child's overall well-being (*see, id.* slip op at 732-733). In this regard, the record reveals that prior to 1998, neither the mother nor the father had any real relationship with Dustin. By her own admission, the mother had no contact with the child from 1993 to 1998—no cards, no presents, no visitations. Although the father similarly was absent from the child's life during this period, the record discloses that this was due in large measure to the mother's efforts to persuade the father that he was not, in fact, Dustin's biological father. As noted previously, the father testified that when he inquired as to the child's whereabouts in June 1992, the mother stated, "His father adopted him."[3] Ramona offered similar testimony at the hearing, stating that the mother indicated that she did not want the father to learn of the child's whereabouts, fearing that he would interfere with her decision to have Ramona and Kevin adopt the child. The record reflects that once the father learned that he indeed was Dustin's biological father, he promptly commenced a habeas corpus proceeding seeking custody of the child and thereafter sought and obtained visitation rights. The record further reflects that the father attended and participated in the case reviews undertaken by DSS, in addition to attending parenting classes and Dustin's counseling sessions, and sought increased visitation with the child. Finally, the father commenced proceeding No. 1 seeking custody. Thus, on balance, the father has demonstrated a greater commitment to parenting the child than the mother.

Additionally, although the psychologist testifying on behalf of the mother opined that custody of Dustin should be granted to her, even a cursory review of the record raises significant concerns as to her ability to be an effective parent. The DSS case file is replete with references to the mother's apparent lack of commitment to the parenting process; indeed, the case notes reflect that the mother sought custody only in an attempt to prevent the father from doing so and, according to Ramona, the mother agreed to give the child to her in the event that the mother was successful in obtaining custody of the

---

3. As the father explained at the hearing, "That tells me that I was right, I wasn't the father and to my knowledge you cannot have him adopted out without the father's signature and I did not sign off."

child.[4] The record further demonstrates the mother's repeated interference with the father's telephone access to Dustin and his biological siblings and her inability or unwillingness to foster and encourage a positive relationship between Dustin and his father. Thus, although placement with his biological siblings would be an important consideration, the record as a whole, including the Law Guardian's recommendation, militates in favor of a finding that it would be in Dustin's best interest for custody to be awarded to his father.

Peters, Spain, Carpinello and Rose, JJ., concur. Ordered that the orders are reversed, on the law, without costs, petition in proceeding No. 1 granted, petition in proceeding No. 2 dismissed, and matter remitted to the Family Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision.

---

4. Notably, although DSS argues for affirmance on appeal, counsel for DSS urged in her summation that Family Court grant custody to the father. It also should be noted that at the time Family Court granted custody to the mother, she did not have an application for custody pending before the court.